UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

FELISHA L. SALCHENGBERG,

                Plaintiff,

   v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Defendant.

Case No. 3:11-cv-05587-KLS

ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

## FACTUAL AND PROCEDURAL HISTORY

On June 5, 2008, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging disability as of February 2, 2008, due to endometriosis, severe depression and Parkinson's disease. See Administrative Record ("AR") 15, 107, 112, 138.

ORDER - 1

Both applications were denied upon initial administrative review and on reconsideration. See AR 15, 65, 72, 74. A hearing was held before an administrative law judge ("ALJ") on March 31, 2010, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 31-58.

On April 8, 2010, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 15-25. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on May 31, 2011, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. § 404.981, § 416.1481. On July 29, 2011, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #1-#3. The administrative record was filed with the Court on October 13, 2011. See ECF #9. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded for further administrative proceedings, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in discounting plaintiff's credibility; (3) in assessing her residual functional capacity; and (4) in finding her to be capable of performing other jobs existing in significant numbers in the national economy. For the reasons set forth below, however, the Court disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore hereby finds that defendant's decision should be affirmed.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

ORDER - 2

support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

ORDER - 3

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

A. Dr. Alvord

Plaintiff argues the ALJ erred in making the following findings:

Scott Alvord PsyD conducted a psychological evaluation on September 30, 2008. Dr. Alvord diagnosed the claimant with major depressive disorder, panic disorder with agoraphobia (provisional) and with obsessive compulsive personality traits. (Exhibit 6F:5) The evaluation report contains significant

ORDER - 4

inconsistencies both internally and with the medical evidence of record. The claimant described "significant" limitations relating to household maintenance due to her mood, pain and tremors. She described having difficulty motivating herself to change her clothes or get out of bed. She reported increased anxiety as a reason for social isolation. (Exhibit 6F:3) She also incorrectly reported she had no history of substance abuse. These self-reported symptoms appear to be the basis for Dr. Alvord's opined limitations. However, his observations do not match his opined limitations. The claimant appeared neatly and appropriately dressed. She was "groomed consistent with the weather and interview situation." There was no acute distress. (Exhibit 6F:3) While she appeared depressed, she was not tearful. Her psychomotor movements were within normal limits. She did not demonstrate any pain behaviors. Her thought process was intact and her speech normal, although slightly slowed. Dr. Alvord noted the claimant complained of difficulty with concentration and focus, but found her long-term and short-term memory intact. Similarly, she completed all tests designed to test attention and concentration, most of which she completed without difficulty. (Exhibit 6F:4) Due to the above inconsistencies, Dr. Alvord's opinion regarding the claimant's ability to succeed in an occupational setting has been given little weight. Moreover, it was rendered when the claimant was not being treated for her mental health symptoms, and, as discussed above, she reported improvement to providers when treated.

AR 23.

Specifically, plaintiff asserts the ALJ failed to articulate what actual "medical evidence of record" was not consistent with Dr. Alvord's opined limitations. The Court agrees it was not sufficient for the ALJ to reject those limitations by making such a general statement concerning lack of consistency. See Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988). The Court agrees as well that the ALJ erred in rejecting Dr. Alvord's opined limitations on the basis that plaintiff did not correctly report her history of substance abuse, as there is no indication it had any impact on plaintiff's mental health functioning or that Dr. Alvord would have changed his opinion had he been fully aware of that history. See AR 262-66. The Court, though, finds these errors to be harmless in this case.[1] This is because the ALJ provided other, legitimate reasons for rejecting

---

[1] See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where it is non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion); see also Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (finding any error on part of ALJ would not have affected "ALJ's ultimate decision.").

ORDER - 5

Dr. Alvord's opinion as discussed below.

The ALJ, for example, pointed out that Dr. Alvord's own clinical observations "d[id] not match his opined limitations." AR 23; see also AR 264-66; Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancies between medical source's functional assessment and that source's clinical notes, recorded observations and other comments regarding capabilities of claimant, "is a clear and convincing reason for not relying" on that assessment); Weetman v. Sullivan, 877 F.2d 20, 23 (9th Cir. 1989). Plaintiff argues the ALJ did not offer any explanation as to how the two did not match, but Dr. Alvord's fairly unremarkable clinical observations – which the ALJ summarized in detail (see AR 23, 264-65) – clearly are at odds with his opinion that she was "significantly impaired" (AR 266). Nor does the Court find the ALJ had to set forth his rejection here with any more specificity.[2]

The ALJ also correctly rejected the limitations opined by Dr. Alvord on the basis that plaintiff "was not being treated for her mental health symptoms" at the time, and that she had "reported improvement to providers when treated." AR 23. There are some reports of worsening symptoms or decreased medication benefit. See AR 263 ("She suggested she is receiving very little benefit from current psychotropic medications"), 392 ("[w]orsening" depression). But the record largely supports the ALJ in finding improvement. See AR 202 (Paxil helping depression, which was "**well controlled**" (emphasis in original)), 203 (depression "significantly improved"), 251 ("Haven't felt this good for 2 years"), 306 ("her antidepressants are working"; "improved"

---

[2] While, as discussed above, it is insufficient to merely state that a medical source's opinion is being rejected on the basis of lack of consistency with the other evidence in the record, also as discussed above, an ALJ gives "specific, cogent reasons" for rejecting such an opinion, "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings," as the ALJ did here. Reddick, 157 F.3d at 725. Further, the ALJ need not recite "magic words" when evaluating medical evidence, as "it serves no purpose to require every step of each decisional process to be enunciated with precise words and phrases drawn from relevant disability regulations." Magallanes, 881 F.2d at 755; see also Renner v. Heckler, 786 F.2d 1421, 1424 (9th Cir. 1986) ("[I]t serves no purpose to require every step of each decisional process to be enunciated with precise words and phrases drawn from relevant disability regulations.").

ORDER - 6

symptoms), 307 (Paxil stopped working "after a while," but Prozac and Lamictal "helping so far"), 308 (depression "has subsided significantly"; "her friends feel that she is really for the most part having very good control" on current dose of Paxil), 397 (although "not well controlled on current dose of [P]rozac," depression "better"), 423 ("[e]nthusiastic, hopeful"; improved, with mood at "8/10"), 425 (improved mood ("10/10"), stability and affect, appearing relaxed and calm), 426 ("[m]ood = 8/10"; "lively and animated" with bright affect), 427 ("mood and overall life skills are improved"); 436 ("happy with her life").

B. Dr. Ragonesi

Plaintiff challenges as well the ALJ's following findings:

> Amanda Ragonesi PsyD conducted a psychological evaluation of the claimant on November 24, 2008. (Exhibit 16F) The claimant reported she is able to do [sic] complete household chores, if she paces herself. She provides her own transportation. She denied any issues with substance abuse. (Exhibit 16F:7). The claimant presented tearful and with a full range of affective expressions. She spoke clearly and logically. (Exhibit 16F:8) Dr. Ragonesi opined it would be unlikely the claimant could function appropriately in a work setting and she would respond to the stress with increased symptoms of depression and anxiety, which would in turn interfere with her concentration and work tasks. However, it appears Dr. Ragonesi based her opinion in large part upon the claimant's subjective complaints. (Exhibit 16F:3) The medical evidence of record contains the claimant's reports to her physician that she feels good and her medication is working. The claimant had no difficulty with performing various tests designed to gauge the claimant's memory, recall, attention, and concentration. The claimant demonstrated she was able to follow a simple three stage command without difficulty. Dr. Ragonesi recommended that the claimant participate in ongoing therapy. (Exhibit 16F:8) Based on the inconsistencies within Dr. Ragonesi's report, the lack of explanation for her opined limitations, and the inconsistencies between the limitations and the medical evidence of record, Dr. Ragonesi's opinion has been given little weight. In addition, this evaluation was undertaken at a time when the claimant was still prescribed pain medication, and ostensibly experiencing pain from a condition that has since resolved. (Exhibit 16F:7).

AR 23. Plaintiff first argues that in finding her own subjective complaints were largely the basis of Dr. Ragonesi's opinion, the ALJ did not take into account the fact that Dr. Ragonesi wrote on

ORDER - 7

a mental residual functional capacity assessment ("MRFCA") form she completed at the time she issued her evaluation report, that the moderate limitations in plaintiff's cognitive functioning she noted on that form were based on a "review of prior records," as well as on the evaluation report and "clinical observations." AR 322. The Court finds no error here.

First, the evaluation report itself – which contains the opinion that it was "unlikely that [plaintiff] would be able to functional appropriately in a typical work setting" (AR 327) – gives no indication that Dr. Ragonesi relied on a review of plaintiff's prior records (see AR 325-27). Second, the comments provided by Dr. Ragonesi on the MFRA form themselves seem largely to be based on what plaintiff told her. See AR 322. A physician's opinion premised primarily on a claimant's subjective complaints, furthermore, may be discounted where the record supports the ALJ in discounting the claimant's credibility, as it does here as discussed in greater detail below. See Tonapetyan, 242 F.3d at 1149; see also Morgan, 169 F.3d at 601.[3]

In addition, as noted by the ALJ, the clinical observations and mental status examination results – including testing related to gauging memory, recall, attention and concentration – Dr. Ragonesi provided were largely unremarkable (see AR 327). Plaintiff questions how testing in these areas contradicts Dr. Ragonesi's opinion that her symptoms likely would interfere with her ability to concentrate, pay attention and learn work tasks, but her successful completion of tests designed specifically to measure an individual's performance in those specific areas clearly does. See id. Accordingly, while as with Dr. Alvord's opinion, the ALJ did err in failing to state more

---

[3] In Ryan v. Commissioner of Social Security, 528 F.3d 1194 (9th Cir. 2008), the Ninth Circuit did state that "an ALJ does not provide clear and convincing reasons for rejecting an examining physician's opinion by questioning the credibility of the [claimant's] complaints where the [examining physician] does not discredit those complaints and supports his [or her] ultimate opinion with his [or her] own observations." Id. at 1199-1200. The Ninth Circuit, however, went on to note that there was "nothing in the record to suggest" the physician in that case had relied on the claimant's own "description of her symptoms . . . more heavily than his own clinical observations." Id. at 1200. Such is not the case here as discussed above.

ORDER - 8

specifically "the medical evidence in the record" she found was inconsistent with Dr. Ragonesi's opinion, she provided other, valid reasons for rejecting it.[4]

II. The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan, 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273,

---

[4] Plaintiff further challenges the ALJ's rejection of Dr. Ragonesi's opinion on the basis that "[t]he medical evidence of record contains [her] reports to her physician that she feels good and her medication is working" (AR 23), arguing the ALJ failed to explain what relevance her being prescribed pain medications has on Dr. Ragonesi' opinion as to her mental functioning. But what plaintiff mostly reported to her physician was the benefit she received from her psychotropic medications, which was what the ALJ likely was referring to in this instance. See AR 203, 251, 306-07, 397; see also AR 202, 308, 422-28, 436; Magallanes, 881 F.2d at 755 (specific and legitimate inferences may be drawn from ALJ's opinion). Thus, here too the ALJ did not err.

ORDER - 9

1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

>The ALJ discounted plaintiff's credibility in part for the following reasons:
>
>The claimant has alleged her impairments cause her to be unable to maintain substantial gainful activity. She testified she is unable to do any household cleaning, care for her children, cook, grocery shop, or many other activities of daily living. However, this contradicts the claimant's previous statements and the evidence of record. The claimant previously reported she can take care of personal grooming, pet care, cleaning, laundry, and vacuuming. (Exhibit 4E) Every other weekend, the claimant cares for her two children. The claimant reports no other social activities. She enjoys reading and computer games, which show an ability to concentrate and remember. (Exhibit 4E:5)

AR 20-21. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). First, such daily activities can "meet the threshold for transferable work skills." Id. A claimant's testimony may be rejected if the claimant "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Smolen, 80 F.3d at 1284 n.7.

The claimant need not be "utterly incapacitated," however, to be eligible for disability benefits, and "many home activities may not be easily transferrable to a work environment." Id. In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722. Second, a claimant's daily activities can "contradict his [or her] other testimony." Id. But in this case, the record fails to establish that the daily activities plaintiff reported were performed by her for a substantial part of the day or that they were transferrable to a work setting. See AR 44-47, 145-50, 152, 159, 163, 169-73, 264, 325-26. Nor do those activities necessarily contradict her

ORDER - 10

other testimony. See id.

    Plaintiff also argues the ALJ erred in discounting her credibility on the following basis:

> . . . [T]he claimant appears to have been treating with multiple providers for different problems. Devin Hansen, PA-C saw the claimant for her knee pain and sleep related problems, but she did not receive treatment for tremors or depression. (Exhibit 24F) Several other doctors treated the claimant for various physical ailments aside from her depression, tremors, and knee pain complaints. (Exhbits 18F, 19F) Michale Domash, M.D. treated the claimant for sleep and depression. (Exhibit 4F) The Sea Mar health center treated the claimant for depression and her tremors. (Exhibit 1F, 10F, 14F, 22F) The claimant's lack of consistency regarding her complaints, failure to advise each of the medical providers of a complete medical history, and failure to treat with the same provider or providers continuously casts doubt on the claimant's credibility regarding the severity of these conditions and demonstrates some drug-seeking behavior.

AR 20-21. An ALJ may properly consider a claimant's drug-seeking behavior in discounting his or her credibility. See Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001). But the Court agrees with plaintiff that the ALJ erred in discounting her credibility on this basis. The ALJ fails to point to anything in the record to indicate plaintiff's treatment by more than one provider was inappropriate, that she was intentionally inconsistent in reporting her complaints to her providers or purposefully did not provide a complete medical history thereto, or that such evidence is indicative of drug-seeking behavior. Therefore, here too, this basis for discounting plaintiff's credibility was improper.

    Nevertheless, the fact that some of the reasons for discounting a claimant's credibility may have been improper, does not render the ALJ's overall credibility determination invalid, as long as that determination is supported by substantial evidence in the record, as it is in this case for the reasons discussed below. Tonapetyan, 242 F.3d at 1148; see also Bray v. Commissioner of Social Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (although ALJ relied on improper reason for discounting claimant's credibility, he presented other valid, independent bases for

ORDER - 11

doing so, each with "ample support in the record"). For example, the ALJ discounted plaintiff's credibility in part because:

> At the hearing, the claimant testified she has tremors three to four times per week, primarily affecting her arms and neck. The tremors last from one-half to a full day and cause her to lie in bed all day when they occur. Despite these symptoms, the claimant does not currently take medication for the condition. She indicated the Depakote was too strong, but there is no evidence the claimant sought other treatment or worked with her physician to find an alternative medication. The claimant even reported in August 2007 that she had no tremors. (Exhibit 1F:3) There is minimal medical evidence regarding her condition or treatment of the claimant's tremors since the alleged onset of disability. The claimant was treated at Vancouver Rehabilitation and Therapy Clinic for chronic cervical pain in October 2009, but the medical records do not contain any reference to tremors. The only noted past medical history is of depression. (Exhibit 23F:1) Many of the claimant's other medical records similarly do not reference the claimant's tremors, suggesting the physicians were not aware of the condition. These factors suggest the condition is not as disabling as alleged.
>
> . . .
>
> The claimant's incomplete follow through with treatment is documented throughout the medical evidence . . . When asked at the hearing if she was currently receiving mental treatment, the claimant responded that she had initiated treatment at Columbia River Mental Health just two weeks prior to the hearing, though regular treatment had been recommended significantly earlier. (Exhibit 6F, 16F)

AR 20-21. Plaintiff does not challenge these particular findings, nor does the Court find them to be improper. see <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ in discounting claimant's credibility in part due to lack of consistent treatment, noting fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she sought some treatment, was powerful evidence regarding extent to which she was in pain); <u>Meanal v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered failure to request serious medical treatment for supposedly excruciating pain); <u>Regennitter v. Commissioner of SSA</u>, 166 F.3d 1294, 1297 (9th Cir. 1998) (determination that claimant's complaints are "inconsistent with

ORDER - 12

clinical observations" can satisfy clear and convincing requirement); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription for conservative treatment only to be suggestive of lower level of pain and functional limitation); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not seeking, or following prescribed course of, treatment "can cast doubt on the sincerity of the claimant's pain testimony").

The ALJ also discounted plaintiff's credibility in part based on evidence in the record that she reported improvement in her mental health symptoms. See AR 21. The ALJ may discount a claimant's credibility on the basis of medical improvement. See Morgan, 169 F.3d 595, 599 (9th Cir. 1999); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). Although plaintiff disputes that the evidence in the record supports the ALJ on this issue, as discussed above, that evidence does largely show plaintiff reported improvement in her symptoms. See AR 202-03, 306-08, 397, 423, 425-27, 436. Thus, the ALJ properly found plaintiff to be not fully credible on this basis as well. Lastly, the ALJ discounted plaintiff's credibility for the following reasons:

> Reviewing the claimant's work history, she has held semi-skilled and skilled jobs for various periods of time. Some of these jobs were performed while the claimant complained of tremors. . . .

AR 22. The ALJ's consideration of plaintiff's work history was not improper, nor does plaintiff argue otherwise here. See Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly discounted claimant's credibility in part due to fact that he left his job for reasons other than his alleged impairment).

III.     The ALJ's Assessment of Plaintiff's Residual Functional Capacity

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that

ORDER - 13

step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.

Residual functional capacity thus is what the claimant "can still do despite his or her limitations." Id. It is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case assessed plaintiff with the residual functional capacity:

> **. . . to perform sedentary work . . . She could frequently balance, stoop, kneel, crouch, and crawl. She could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She is limited to frequent bilateral fingering due to hand tremors and must avoid concentrated exposure to vibration and hazards. The claimant is capable of simple routine tasks and can have limited interaction with the public.**

AR 19 (emphasis in original). Plaintiff argues the ALJ erred here by not including all her mental functional limitations. Specifically, plaintiff asserts the opinion of non examining psychologist, Anita Peterson, Ph.D., that she could "adapt to low-pressure work" (AR 285) was not properly accounted for by the ALJ. In regard to that opinion, the ALJ found:

ORDER - 14

> Dr. Peterson, State agency consultant, opined the claimant is capable of simple repetitive tasks over a forty hour work week and eight hour work day. The claimant is able to have limited interaction with the public and must be limited to low-pressure work. (Exhibit 8F) This opinion has been given moderate weight. The limitation to low-pressure work appears to be based on the claimant's subjective complaint that she is unable to tolerate the stress of employment. The undersigned has considered Dr. Peterson's limitation to low-pressure work. As low-pressure is subject to the claimant's perception and not a quantifiable limitation, it has not been included. However, while this specific limitation is not included in the residual functional capacity, the undersigned notes the claimant is limited to simple, routine tasks that do not require judgment.

AR 22-23. The record, though, supports the ALJ in rejecting the limitation to low-pressure work on the basis that it appeared to be based on plaintiff's own self-reporting, in light of the narrative statements contained in Dr. Peterson's report. See AR 285[5]; Tonapetyan, 242 F.3d at 1149 (ALJ may disregard medical opinion premised on claimant's complaints where record supports ALJ in discounting claimant's credibility); Morgan, 169 F.3d at 601. Plaintiff goes on to argue that Dr. Peterson's opinion here is consistent with that of Dr. Ragonesi, but as discussed above, the ALJ did not err in also discounting the latter doctor's opinion. Nor was the ALJ required to adopt any additional limitations based on plaintiff's own testimony, given that also as discussed above, the ALJ properly discounted her credibility.

IV.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e), § 416.920(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines

---

[5] Citing this same page of the record, plaintiff argues Dr. Peterson based her opinion on her review of the treatment records and Dr. Alvord's evaluation. But the only reference in Dr. Peterson's narrative set forth on that page dealing with the ability to tolerate work stress clearly comes from what plaintiff herself has reported. See id.

ORDER - 15

(the "Grids"). <u>Tackett</u>, 180 F.3d at 1100-1101; <u>Osenbrock v. Apfel</u>, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. <u>See</u> <u>Martinez v. Heckler</u>, 807 F.2d 771, 774 (9th Cir. 1987); <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. <u>See</u> <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988). Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." <u>Id.</u> (citations omitted). The ALJ, however, may omit from that description those limitations he or she finds do not exist. <u>See</u> <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. <u>See</u> AR 54. In response to that question, the vocational expert testified that an individual with those limitations – and with the same age, education and work experience as plaintiff – would be able to perform other jobs. <u>See</u> AR 54-55. Based on the testimony of the vocational expert, the ALJ found plaintiff would be capable of performing other jobs existing in significant numbers in the national economy. <u>See</u> AR 24-25.

Plaintiff argues the ALJ failed to include all of her mental functional limitations in the hypothetical question she posed to the vocational expert. As discussed above, however, because the ALJ did not err in evaluating the medical evidence in the record or in discounting plaintiff's credibility, the ALJ, also as discussed above, did not err in assessing her residual functional capacity, and thus did not need to include any additional limitations in the above hypothetical question. Plaintiff further states that while the vocational expert testified that the jobs he

ORDER - 16

identified that she could do that involve doing small products assembly, packing and sorting, do not typically require judgment, they did have production requirements. But the evidence fails to show plaintiff had any actual functional limitations in regard to production requirements, and in any event, the vocational expert testified that with the RFC the ALJ assessed, she would be able to perform those jobs.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ properly concluded plaintiff was not disabled, and therefore hereby affirms the ALJ's decision.

DATED this 21st day of March, 2012.

Karen L. Strombom
United States Magistrate Judge

ORDER - 17